# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **INTERCHEM CORP. USA,** <br><br> Plaintiff, <br><br> v. <br><br> **PROMPT PRAXIS LABORATORIES, LLC, et al.,** <br><br> Defendants. | **No. 13 CV 5501** <br><br> **Magistrate Judge Mary M. Rowland** |

## MEMORANDUM OPINION AND ORDER

On December 16, 2013, after a full day of mediation before the undersigned Magistrate Judge, the parties reached a settlement of their dispute.[1] On February 7, 2014, the parties informed the Court that they had reached an impasse in drafting a written settlement agreement. After additional negotiations were unsuccessful, Plaintiff filed a motion to enforce the settlement on March 28, 2014. Defendants filed their memorandum in opposition on April 15, 2014. The parties have consented to the jurisdiction of the Magistrate Judge as to this Motion. (Dkt. 74). For the reasons stated below, the Motion is granted in part and denied in part.

---

[1] The settlement did not resolve the third party complaint filed by third-party plaintiff Prompt Praxis Laboratories, LLC, against third-party defendant Katherine Gregory. (Dkt. 47).

# I. BACKGROUND

In Spring 2011, Prompt Praxis Laboratories, LLC (PPL) agreed to provide laboratory services for Interchem Corporation USA. In Exchange, Interchem provided financial assistance and purchased laboratory equipment (Equipment) to be used by PPL to perform the laboratory services. On July 1, 2011, the parties entered into a written Equipment Rental Agreement for the lease of the Equipment (Equipment Lease). The Equipment Lease obligated PPL to make monthly lease payments beginning in September 2012.

Interchem alleges that PPL failed to make any monthly payments when due under the Equipment Lease and failed to provide the promised laboratory services. The Amended Complaint makes claims against all Defendants for breach of contract and unjust enrichment, and against the individual Defendants for conversion, replevin, and detinue.

On December 16, 2013, after a full day of mediation before the Magistrate Judge, the parties reached a "binding agreement" of their dispute (Tr. 8), which was placed on the record (*id.* 1–14). All parties and their counsel were present. (*Id.* 1–2, 14). As part of the agreement, the parties agreed that certain laboratory equipment would be returned to Interchem:

> The Court: Now the laboratory equipment, some lawyer might want to jump in and describe what that is exactly, and the terms under which it is going to be returned. I know that the Plaintiff is going to pay for the moving of it and pay for the inspection of it prior to the move of it, but I think there [are] probably other[] terms that you guys want to put on the record here.

> [Plaintiff's Counsel]: Well, we'll have to perhaps negotiate some formal written agreement. But we'll—my understanding of this is we'll make a payment, and then a few days after we have inspected and removed the equipment, we can work that out. But I—it will be almost contemporaneous. We just need to be sure that the equipment is in good, you know, serviceable condition.
>
> As for the equipment, that [can[2]] be identified because I think there are schedules that—of the specific items of equipment that are *attached to the equipment lease*. So we should be able to incorporate that into our settlement agreements so we know exactly what equipment we're talking about.
>
> The Court: Okay.
>
> [Defendants' Counsel]: And I believe that schedule is already part of the exhibits [to the complaint[3]] in this matter.

(*Id.* 4–5) (emphasis added).

## II. DISCUSSION

The parties agree that the settlement agreement set forth on the record on December 16, 2013, is a binding and enforceable agreement. (Mot. 2, 4–6; Resp. 2, 13). The parties' only dispute is whether the terms of the settlement agreement requires PPL to return: (1) all of the software scheduled on the Equipment Lease or excludes the software installed on PPL's server and (2) all of the equipment listed on Exhibit B to the Complaint or excludes two pieces of equipment because this equipment was not subject to the terms of the Equipment Lease. (Mot. 2; Resp. 3–4, 12–13). Specifically, the items in dispute are: (1) the Waters NuGenesis SMDS software; (2) the

---

[2] The written transcript inadvertently states "can't." The Court has listened to the original audio tape of the conference and confirmed that Plaintiff's counsel stated that the equipment *could* be identified from the schedules attached to the Equipment Lease. (*Accord* Mot. 11 n.1; Resp. 6).

[3] The written transcript states "unintelligible." After listening to the original audio tape, the Court confirmed that Defendants' counsel stated "to the complaint." (*Accord* Mot. 11 n.2; Resp. 12–13).

Waters Empower software; (3) the Mettler Toledo LabX software; (4) a Tuttenauer Steam Sterilizer; and (5) an Atlas Suntest Light Exposure Chamber. (Mot. 7, 10; Resp. 3–4, 12).

Settlement agreements—whether oral or written—are contracts, and their construction and enforcement are governed by basic contract principles, under applicable state contract law—in this case, the law of Illinois. *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th Cir. 2008); *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506–07 (7th Cir. 2007); *Pampered Chef, Ltd. v. Alexanian*, No. 10 C 1399, 2012 WL 6046896, at *13 (N.D. Ill. Dec. 5, 2011). "[I]ssues of interpretation in contract cases should be resolved on the basis of the contract's language in order to minimize the costs and uncertainties of enforcing contracts." *In re Comdisco, Inc.*, 434 F.3d 963, 968 (7th Cir. 2006) (applying Illinois law). "When the language of a contract is clear, a court must determine the intent of the parties *solely* from the plain language of the contract." *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164, 765 N.E.2d 513, 516 (2002) (emphasis added). "The language of a contract must be given its plain and ordinary meaning." *Id.* "A contractual provision is not ambiguous merely because the parties do not agree on the meaning of the provision or because the provision is not defined in the contract." *Nance v. Rothwell*, No. 09 C 7733, 2012 WL 1230722, at *4 (N.D. Ill. Jan. 17, 2002), *objections overruled*, 09 C 7733, 2012 WL 1232036 (N.D. Ill. Apr. 12, 2012) (citations omitted); *accord Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1138 (7th Cir. 2001) (applying Illinois law); *Winter v. Minn. Life Ins. Co.*, 199 F.3d 399, 408 (7th Cir. 1999) (same); *Forest Glen*

*Cmty. Homeowners Ass'n v. Bishof*, 321 Ill. App. 3d 298, 303, 746 N.E.2d 1285, 1289 (2001). Instead, a contractual provision is ambiguous "only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (applying Illinois law).

Here, the terms of the settlement agreement are unambiguous. Defendants agreed to return certain laboratory equipment. (Tr. 4). The parties explicitly agreed that the specific equipment to be returned could be identified by the schedule (Equipment Schedule) attached to the Equipment Lease, a copy of which was attached to the original Complaint and the Amended Complaint. (*Id.* 4–5; *see* Dkt. 1, 28). The Equipment Schedule contains a list of the Interchem purchase orders and invoices for the laboratory equipment being leased pursuant to the Equipment Lease. (Dkt. 28 at 26; *see id.* at 21 ("[Interchem] shall lease the equipment listed on the attached Exhibit A."), 24 (describing Exhibit A as the "Equipment Schedule" for the laboratory equipment leased)).

### A. Server Software

Defendants do not dispute that the Waters NuGenesis SMDS, Waters Empower, and Mettler Toledo LabX software (collectively, Server Software) are included on the Equipment Schedule. (Resp. 10–11; *see also* Mot. 7 ("A schedule of invoices and purchase orders for the Equipment [subject to the settlement agreement] are at-

tached to the Equipment Lease. These purchase orders and invoices include all of the software programs purchased by Interchem, including the server software components of that software."); Durante Decl. ¶¶ 3, 6–9 & Ex. B). Instead, Defendants contend that the parties never intended the Server Software to be included in the "equipment" to be returned as part of the settlement agreement. (Resp. 5–12). To determine what the parties meant by "equipment," Defendants argue that throughout this litigation, the parties have defined "equipment" as merely the physical equipment in PPL's laboratory. (*Id.* 6–9). They contend that in the Amended Complaint and in settlement demand letters, Plaintiff distinguished software from laboratory equipment. (*Id.* 6–8). Therefore, Defendants assert the parties intended that "PPL would return any 'Equipment' found on those invoices [referenced on the Equipment Schedule], not that PPL would return all items on those invoices." (*Id.* 10). Defendants also contend that the UCC definition of "equipment," which does not include software unless it is embedded in the equipment, should be incorporated into the settlement agreement. (*Id.* 9–10). But Illinois law precludes looking outside the "four corners" of the settlement agreement where no ambiguity exists. *Bourke*, 159 F.3d at 1036 (citing *Flora Bank & Trust v. Czyzewski*, 222 Ill. App. 3d 382, 583 N.E.2d 720, 725 (1991)). And, as described above, the settlement agreement clearly identifies "equipment" as the materials listed on the Equipment Schedule, which includes both physical items and software.

Defendants assert that "the plain language and structure of the Equipment Lease attached to Interchem's Complaint also make clear that the lease was not in-

tended to cover the Server Software." (Resp. 8). They argue that because "the payment made by Interchem as reflected in the invoices for the licenses to the Server Software was for only one year," the Equipment Lease did not intend to cover the Server Software. (*Id.*). But the Equipment Lease does not make that distinction, and the settlement agreement—the only contract in dispute—clearly identifies "equipment" as the items referenced in the Equipment Schedule, which includes the Server Software.

**B. Steam Sterilizer and Atlas SunTest Equipment**

Plaintiff acknowledges that the purchase orders for the Tuttenauer Steam Sterilizer and Atlas Suntest Light Exposure Chamber are not listed on the Equipment Schedule. (Mot. 10). Nevertheless, Interchem argues that they are entitled to this equipment because it "was provided to Prompt Praxis on the same basis as the other laboratory equipment [referenced in the Equipment Lease]." (*Id.*). However, as discussed above, the settlement agreement clearly identified the equipment to be returned as only those items described on the Equipment Schedule.

Plaintiff also argues that the equipment should be returned because it was included in a List of Equipment, which was attached as an exhibit to the initial complaint. (Mot. 10). Interchem argues that Defendants' counsel "agreed in open court that the equipment subject to the settlement agreement was the equipment on the schedules to Interchem's Initial Complaint." (*Id.* 11). During the colloquy among counsel and the Court, Defendants' counsel stated, "And I believe *that schedule* is already part of the exhibits [to the initial complaint] in this matter." (Tr. 5) (empha-

sis added). Plaintiff contends that Defendants' counsel was referring to both exhibits attached to the initial complaint—the Equipment Lease, including the Equipment Schedule, and a separate exhibit, described by Plaintiff as a list of the Equipment. (Mot. 10–11).

Plaintiff misconstrues Defendants' counsel's testimony. Immediately prior to Defendants' counsel's statement, Plaintiff's counsel stated that the equipment to be returned "can be identified" by "the schedules . . . of the specific items of equipment that are attached to the equipment lease." (Tr. 4). Thus, Defendants' counsel's reference to "*that schedule*" clearly refers only to the Equipment Schedule, which was attached to the initial complaint, and not to the other exhibit to the initial complaint, which contained a list of equipment. *See Flora Bank*, 583 N.E.2d at 725 ("A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms."); *accord Bourke*, 159 F.3d at 1036. Moreover, the first amended complaint—the operative complaint in this matter—does not include this second list of equipment as an exhibit.

## C. Summary

In sum, the binding settlement agreement requires PPL to return all equipment purchased by Interchem pursuant to the invoices and purchase orders described on the Equipment Schedule attached to the Equipment Lease, which includes the Server Software. Nevertheless, because the Mettler Toledo purchase order references only the LabX 2010 software, Defendants have no obligation to return the LabX 2012 software, which they purchased on their own. (Resp. 4). Because the

purchase orders for the Tuttenauer Steam Sterilizer and Atlas Suntest Light Exposure Chamber are not listed on the Equipment Schedule, attached to the Equipment Lease, they were not made part of the Settlement Agreement. Therefore, PPL has no obligation to return them.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Enforce Settlement Agreement [70, 87] is **GRANTED IN PART** and **DENIED IN PART**. Defendants shall return the Waters NuGenesis SMDS software, the Waters Empower software, and the Mettler Toledo LabX 2010 software to Plaintiff no later than June 17, 2014.

E N T E R:

Dated: May 6, 2014

MARY M. ROWLAND
United States Magistrate Judge